**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| ANGELIC JOHNSON and SARAH STODDARD,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>JOCELYN BENSON, in her official capacity as Michigan Secretary of State; and JEANNETTE BRADSHAW, in her official capacity as Chair of the Board of State Canvassers for Michigan,<br><br>　　　　　　Defendants. | CIVIL ACTION<br><br>Case No. 1:20-cv-01098-JTN-PJG<br><br>Hon. Janet T. Neff |

**PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE**

EXPEDITED CONSIDERATION REQUESTED

Proposed Intervenor-Defendants DNC Services Corporation/Democratic National Committee and Michigan Democratic Party ("Proposed Intervenors") seek to participate as intervening defendants in the above-captioned lawsuit to safeguard the substantial and distinct legal interests of themselves, their member candidates, and their member voters, which will otherwise be inadequately represented in the litigation. For the reasons discussed in the memorandum in support, filed concurrently herewith, Proposed Intervenors are entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenors request permissive intervention pursuant to Rule 24(b).

Proposed Intervenors respectfully request that the Court set an expedited schedule regarding this motion to intervene to allow for their participation in any briefing schedules and hearings that are held. Otherwise, Proposed Intervenors' substantial constitutional rights are at risk

1

of being severely and irreparably harmed, as described more fully in the memorandum in support of this motion.

WHEREFORE, Proposed Intervenors request that the Court grant them leave to intervene in the above-captioned matter and to file their proposed motion for extension of time to file a responsive pleading (Ex. 1) and either their motion to dismiss (Ex. 2) or, in the alternative, their pre-motion conference request (Ex. 3).

Dated: November 18, 2020.                                Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
Joe M. Infante (P68719)
MILLER CANFIELD
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
Telephone: (517) 483-4918
eldridge@millercanfield.com
infante@millercanfield.com

Mary Ellen Gurewitz (P25724)
CUMMINGS & CUMMINGS
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
Telephone: (248) 733-3405
maryellen@cummingslawpllc.com

Marc E. Elias (DC #442007)
John M. Devaney (DC #375465)*
Jyoti Jasrasaria (DC #1671527)
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
Telephone: (202) 654-6200
melias@perkinscoie.com
jdevaney@perkinscoie.com
jjasrasaria@perkinscoie.com

William B. Stafford (WA #39849)*
Jonathan P. Hawley (WA #56297)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
wstafford@perkinscoie.com
jhawley@perkinscoie.com

Seth P. Waxman (DC #257337)
Brian M. Boynton (DC #483187)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 663-6000
seth.waxman@wilmerhale.com
brian.boynton@wilmerhale.com

John F. Walsh (CO #16642)
WILMER CUTLER PICKERING HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, Colorado 80202
Telephone: (720) 274-3154
john.walsh@wilmerhale.com

*Counsel for Proposed Intervenor-Defendants DNC Services Corporation/Democratic National Committee and Michigan Democratic Party*

*Admission pending

**CERTIFICATE OF SERVICE**

Scott R. Eldridge certifies that on the 18th day of November 2020, he served a copy of the above document in this matter on all counsel of record and parties via the ECF system.

/s/ *Scott R. Eldridge*
Scott R. Eldridge

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ANGELIC JOHNSON and SARAH STODDARD, <br><br> Plaintiffs, <br> v. <br><br> JOCELYN BENSON, in her official capacity as Michigan Secretary of State; and JEANNETTE BRADSHAW, in her official capacity as Chair of the Board of State Canvassers for Michigan, <br><br> Defendants. | CIVIL ACTION <br><br> Case No. 1:20-cv-01098-JTN-PJG <br><br> Hon. Janet T. Neff |

**PROPOSED INTERVENOR-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendants DNC Services Corporation/Democratic National Committee ("DNC") and Michigan Democratic Party ("MDP," and together, "Proposed Intervenors") move to intervene as defendants in this lawsuit. Through this action, Plaintiffs seek to disrupt Michigan's lawful certification of ballots, based on nothing more than rank speculation, questionable evidence, and fundamentally flawed legal claims. Proposed Intervenors represent a diverse group of Democrats, including elected officials, candidates, members, and voters. Plaintiffs' requested relief—wholesale disenfranchisement of more than 5 million Michiganders—threatens to deprive Proposed Intervenors' individual members of the right to have their votes counted, undermine the electoral prospects of their candidates, and divert their limited organizational resources. Proposed Intervenors' immediate intervention to protect those interests is warranted.

1

Per Rule 24(c) and this Court's Information and Guidelines for Civil Practice § IV(A)(1), attached are a proposed motion for extension of time to file a responsive pleading (Ex. 1), proposed motion to dismiss (Ex. 2), and proposed pre-motion conference request (Ex. 3).

## II. BACKGROUND

**A. The Election**

On November 3, 2020, Michiganders voted in one of the most scrutinized elections in recent history, one that yielded record turnout amid an ongoing pandemic. Despite unprecedented levels of observation and supervision, tall tales of phantom fraud have spread widely in the weeks since election day, including in Michigan, where current tallies have President-elect Joe Biden leading by nearly *150,000 votes*. *See Michigan Election Results*, N.Y. Times, https://www.nytimes.com/interactive/2020/11/03/us/elections/results-michigan.html (Nov. 18, 2020). The *Detroit Free Press* has reported that "Michigan has been no stranger to election-related falsehoods." *Clara Hendrickson* et al., *Michigan Was a Hotbed for Election-Related Misinformation: Here Are 17 Key Fact Checks*, Detroit Free Press (Nov. 9, 2020), https://www.freep.com/story/news/local/michigan/detroit/2020/11/09/misinformation-michigan-16-election-related-fact-checks/6194128002. The paper has also debunked rumors spread on social media and elsewhere, *see id.*—including several among the allegations in Plaintiffs' complaint. *See* Compl., ECF No. 1.

Indeed, although Plaintiffs' allegations are rife with stories of fraud undertaken by election workers at TCF Center, where Detroit's absentee ballots were processed, this impression could not be further from the truth. More than 100 Republican election challengers[1] observed the vote

---

[1] Election "challengers" are volunteers appointed by political parties or other organized groups who can observe the tabulation of absentee ballots and make challenges under certain

2

tabulation on election day, *see* Aff. of David Jaffe ("Jaffe Aff.") ¶ 7 (attached as Ex. 4), and Donna MacKenzie, a credentialed challenger, attested that "there were many more Republican Party challengers than Democratic Party challengers" when she observed the count on November 4. Aff. of Donna M. MacKenzie ("MacKenzie Aff.") ¶ 6 (attached as Ex. 5).[2] David Jaffe, another credentialed challenger at TCF Center who observed the processing of ballots on November 2, 3, and 4, has attested to his "perception that all challengers had a full opportunity to observe what was going on and to raise issues with supervisors and election officials." Jaffe Aff. ¶ 10. Ms. MacKenzie further attested that "the ballot counting process was very transparent," that challengers "were given the opportunity to look at ballots whenever issues arose," and that "[t]here were more than enough challengers to have observers at each table." MacKenzie Aff. ¶¶ 4–5, 7.

While Mr. Jaffe and his fellow challengers—Democratic and Republican alike—"observed minor procedural errors by election inspectors," they "called those errors to the attention of supervisors, and were satisfied that the supervisors had corrected the error and explained proper procedure to the election inspectors." Jaffe Aff. ¶ 12. Indeed, Mr. Jaffe "spoke with several Republican challengers who expressed their view, and in a couple of cases their surprise, that there

---

circumstances. *See, e.g.*, Mich. Comp. Laws §§ 168.730, 168.733. Challengers are *not* permitted to "make a challenge indiscriminately," "handle the poll books . . . or the ballots," or "interfere with or unduly delay the work of the election inspectors." *Id.* § 168.727(3). "Election inspectors," by contrast, are the poll workers appointed by local clerks who perform the tabulation duties. *See id.* § 168.677.

[2] Proposed Intervenor-Defendant Michigan Democratic Party submitted the attached affidavits of David Jaffe, Donna MacKenzie, and Joseph Zimmerman along with its opposition to the plaintiffs' motion for preliminary relief in *Costantino v. City of Detroit*, No. 20-014780-AW (Mich. Cir. Ct. Nov. 11, 2020), another challenge to Wayne County's vote tabulation and election returns currently pending in state court. The court in that case credited the testimony offered in these affidavits in denying the plaintiffs' requested relief. *See Costantino v. City of Detroit*, No. 20-014780-AW, slip op. at 12 (Mich. Cir. Ct. Nov. 13, 2020) (attached as Ex. 16); *see also Costantino v. City of Detroit*, No. 355443 (Mich. Ct. App. Nov. 16, 2020) (denying motion for peremptory reversal and application for leave to appeal) (attached as Ex. 17).

3

were no material issues in the counting." *Id*. Although Mr. Jaffe "received very few reports of unresolved issues from Democratic challengers," he "did receive many reports of conduct by Republican or" Election Integrity Fund ("EIF") "challengers that was aggressive, abusive toward the elections inspectors," and "clearly designed to obstruct and delay the counting of votes." Jaffe Aff. ¶ 13; *see also id.* ¶¶ 18, 20, 22–25, 30; MacKenzie Aff. ¶¶ 21–22. And although election officials attempted to maintain social distancing and other preventative measures to curb the potential transmission of COVID-19, Mr. Jaffe "observed that Republican and EIF challengers repeatedly refused to maintain the mandated distance from the elections inspectors." Jaffe Aff. ¶¶ 17–19. Consequently, some "Republican or EIF challengers were removed from the room after intimidating and disorderly conduct, or filming in the counting room in violation of the rules." *Id.* ¶ 24.

Mr. Jaffe concluded that "while some of the Republican challengers were there in good faith, attempting to monitor the procedure, the greater number of Republican and EIF challengers were intentionally interfering with the work of the elections inspectors so as to delay the count of the ballots and to harass and intimidate election inspectors." *Id.* ¶ 25. Indeed, Joseph Zimmerman, a credentialed challenger on behalf of the Lawyers Committee for Civil Rights Under Law, observed Republican challengers "discussing a plan to begin challenging every single vote on the grounds of 'pending litigation'" and then "repeatedly challenging the counting of military ballots for no reason other than 'pending litigation.'" Aff. of Joseph Zimmerman ¶ 20 (attached as Ex. 6).

**B.    The Lawsuits**

Despite widespread acknowledgement that virtually no fraud occurred, *see, e.g.*, Nick Corasaniti et al., *The Times Called Officials in Every State: No Evidence of Voter Fraud*, N.Y. Times (Nov. 10, 2020), https://www.nytimes.com/2020/11/10/us/politics/voting-fraud.html,

4

various lawsuits have been filed in Michigan in an attempt to sow confusion and cast doubt on the legitimacy of the election—including an action filed in state court by Sarah Stoddard, one of the Plaintiffs here. There, Ms. Stoddard, joined by EIF, sought to delay certification of Wayne County's election results based on some of the same allegations of fraud now rehashed in Plaintiffs' complaint. *See* Verified Compl. for Emergency & Permanent Injunctive Relief, *Stoddard v. City Election Comm'n*, No. 20-014604-CZ (Mich. Cir. Ct. Nov. 4, 2020) (attached as Ex. 7); First Am. Verified Compl. for Emergency & Permanent Injunctive Relief, *Stoddard v. City Election Comm'n*, No. 20-014604-CZ (Mich. Cir. Ct. Nov. 5, 2020) (attached as Ex. 8). On November 6, the Third Judicial Circuit Court for Wayne County denied their motion for injunctive relief. Chief Judge Timothy M. Kenny explained:

> This Court finds that it is mere speculation by plaintiffs that hundreds or thousands of ballots have, in fact, been changed and presumably falsified. . . .
>
> A delay in counting and finalizing the votes from the City of Detroit without any evidentiary basis for doing so, engenders a lack of confidence in the City of Detroit to conduct full and fair elections. The City of Detroit should not be harmed when there is no evidence to support accusations of voter fraud.

*Stoddard v. City Election Comm'n*, No. 20-014604-CZ, slip op. at 4 (Mich. Cir. Ct. Nov. 6, 2020) (attached as Ex. 9).

Other challenges to Michigan's election procedures and results have been similarly rejected as having no legal or factual merit. On election day, the Michigan Court of Claims denied an emergency motion to increase, at the eleventh hour and without any legal justification, the number of challengers allowed at the Oakland County vote center. *See Polasek-Savage v. Benson*, No. 20-000217-MM, slip op. at 3 (Mich. Ct. Cl. Nov. 3, 2020) (attached as Ex. 10). The following day, Donald J. Trump for President, Inc. (the "Trump Campaign") sought an immediate cessation of the counting of absentee ballots based on allegations of insufficient oversight. *See* Verified Compl.

5

for Immediate Declaratory & Injunctive Relief, *Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ (Mich. Ct. Cl. Nov. 4, 2020) (attached as Ex. 11). The Michigan Court of Claims denied the Trump Campaign's emergency motion for declaratory relief, concluding that it was unlikely to succeed on the merits and that, even "overlooking the problems with the factual and evidentiary record," the matter was moot because "the complaint and emergency motion were not filed until approximately 4:00 p.m. on November 4, 2020—despite being announced to various media outlets much earlier in the day." *Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ, slip op. at 5 (Mich. Ct. Cl. Nov. 6, 2020) (attached as Ex. 12). The Trump Campaign has since sought an appeal, *see* Mot. for Immediate Consideration of Appeal Under MCR 7.211(C)(6), *Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ (Mich. Ct. App. Nov. 6, 2020) (attached as Ex. 13), but has failed to correct numerous filing defects as requested by the Michigan Court of Appeals over a week ago, *see* Appellate Docket Sheet, *Donald J. Trump for President, Inc. v. Benson*, No. 355378 (Mich. Ct. App.) (attached as Ex. 14).[3]

MDP was granted intervention in yet another challenge to Wayne County's returns in the state court. *See Costantino v. City of Detroit*, No. 20-014780-AW, slip op. at 2 (Mich. Cir. Ct. Nov. 11, 2020) (attached as Ex. 15). On November 13, the court denied the plaintiffs' motion for preliminary injunction. After carefully reviewing the plaintiffs' affidavits and explaining why their vague allegations of suspicious conduct at TCF Center were unreliable, Chief Judge Kenny concluded that the "[p]laintiffs' interpretation of events is incorrect and not credible." *Costantino*

---

[3] The Trump Campaign has also raised similar claims in a recently filed action in this Court. *See* Compl. for Declaratory, Emergency, & Permanent Injunctive Relief, *Donald J. Trump for President, Inc. v. Benson*, No. 1:20-cv-01083-JTN-PJG (W.D. Mich. Nov. 11, 2020), ECF No. 1. Another group of voter plaintiffs also brought an action in this Court that raised a vote-dilution claim similar to Plaintiffs', but that action was voluntarily dismissed within five days of filing. *See* Notice of Voluntary Dismissal, *Bally v. Whitmer*, No. 1:20-cv-01088-JTN-PJG (W.D. Mich. Nov. 16, 2020), ECF No. 14.

6

*v. City of Detroit*, No. 20-014780-AW, slip op. at 2–10, 13 (Mich. Cir. Ct. Nov. 13, 2020) (attached as Ex. 16). He then observed that

> [i]t would be an unprecedented exercise of judicial activism for this Court to stop the certification process of the Wayne County Board of Canvassers. . . .
>
> Waiting for the Court to locate and appoint an independent, nonpartisan auditor to examine the votes, reach a conclusion and then finally report to the Court would involve untold delay. It would cause delay in establishing the Presidential vote tabulation, as well as all other County and State races. It would also undermine faith in the Electoral System.

*Id.* at 11–12. The Michigan Court of Appeals denied the plaintiffs' motion for peremptory reversal and application for leave to appeal, *see Costantino v. City of Detroit*, No. 355443 (Mich. Ct. App. Nov. 16, 2020) (attached as Ex. 17), and the plaintiffs have sought review before the Michigan Supreme Court, *see* Pls./Appellants' Appl. for Leave to Appeal, *Costantino v. City of Detroit*, No. 162245 (Mich. Nov. 17, 2020) (attached as Ex. 18).

Plaintiffs here have filed yet another baseless complaint intended to disrupt the democratic process, and Proposed Intervenors move to intervene. DNC is a national political committee as defined in 52 U.S.C. § 30101 that is, among other things, dedicated to electing candidates of the Democratic Party in Michigan. MDP is the Democratic Party's official state party committee in Michigan, and its mission is to elect Democratic Party candidates to offices across Michigan, up and down the ballot. Both seek intervention on their own behalf and on behalf of their members, candidates, and voters.

### III.  STANDARD OF LAW

The requirements for intervention under Rule 24 "should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

7

To intervene as of right under Rule 24(a), the proposed intervenor must show that "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)).

"Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 759–60 (E.D. Mich. 2020) (citing *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). "On a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The interest of the intervenors, for the purposes of permissive intervention, only needs to be "distinct" from the defendants, regardless of whether it is "substantial." *Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 800 (E.D. Mich. 2020) (quoting *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018)).

## IV. ARGUMENT

### A. Proposed Intervenors are entitled to intervene as of right.

#### 1. The motion to intervene is timely.

First, this motion is timely. Courts consider the following factors when deciding whether a motion to intervene is timely:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to

8

promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Stupak-Thrall*, 226 F.3d at 472–73 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Zelman*, 636 F.3d at 284.

Proposed Intervenors' motion is timely. It follows only 3 days after Plaintiffs filed their complaint, and before any significant action in the case has occurred. *See Priorities USA*, 448 F. Supp. 3d at 763 (concluding that it was "difficult to imagine a more timely intervention" where legislature moved to intervene twenty days after lawsuit was filed without being formally noticed). Proposed Intervenors seek to intervene to protect against irreparable harm to themselves and to safeguard their members' fundamental rights. This is unquestionably a "legitimate" purpose, and this is a case where "the motion to intervene was timely in light of the stated purpose for intervening." *Kirsch v. Dean*, 733 F. App'x 268, 275 (6th Cir. 2018) (quoting *Linton ex rel. Arnold v. Comm'r of Health & Env't*, 973 F.2d 1311, 1318 (6th Cir. 1992)). Nor is there any plausible risk of prejudice to other parties if intervention is granted. Proposed Intervenors are prepared to follow any briefing schedule the Court sets and participate in any future hearings or oral arguments, without delay. Finally, there are no unusual circumstances that should dissuade the Court from granting intervention.

### 2. Proposed Intervenors have significant protectable interests that might be impaired by this litigation.

Second and third, Proposed Intervenors have significant cognizable interests that might, as a practical matter, be impaired by Plaintiffs' action. Intervenors "'must have a direct and substantial interest in the litigation' such that it is a 'real party in interest in the transaction which

9

is the subject of the proceeding.'" *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 372 (6th Cir. 2014) (citation omitted) (first quoting *Grubbs*, 870 F.2d at 346; and then quoting *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005)). The Sixth Circuit has described this requirement as "rather expansive," *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), and one that courts should "construe[] liberally." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). For example, an intervenor need not have the same standing necessary to initiate a lawsuit, and the Sixth Circuit has rejected the notion that Rule 24(a)(2) requires a "specific legal or equitable interest." *Mich. State AFL-CIO*, 103 F.3d at 1245. The burden of establishing impairment of a protectable interest is "minimal," *id.* at 1247, and an intervenor need only demonstrate that impairment is *possible*. *See Purnell*, 925 F.2d at 948. Moreover, the Sixth Circuit "has recognized that the time-sensitive nature of a case may be a factor in our intervention analysis," *Mich. State AFL-CIO*, 103 F.3d at 1247, and has found impairment of interest where the proposed intervenor "may lose the opportunity to ensure that one or more electoral campaigns in Michigan are conducted under legislatively approved terms that [the proposed intervenor] believes to be fair and constitutional." *Id.* at 1247.

Here, Proposed Intervenors have several legally cognizable interests that might be impaired by this lawsuit. First, Plaintiffs seek to disrupt the certification of lawfully cast ballots and cast doubt on the legitimacy of the election of Proposed Intervenors' candidates. Courts have often concluded that such interference with a political party's electoral prospects constitutes a legally cognizable injury. *See, e.g.*, *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006) (recognizing that "harm to [] election prospects" constitutes "a concrete and particularized injury"); *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding that "the potential loss of an election" is sufficient injury to confer Article III standing). Indeed, political parties—

10

including Proposed Intervenors—have been granted intervention in several recent voting cases on these grounds. *See, e.g.*, *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention to state party and party committee where "Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates" (quoting *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020))).

Moreover, Plaintiffs' requested relief of halting the certification process threatens Proposed Intervenors' members' right to vote. "[T]o refuse to count and return the vote as cast [is] as much an infringement of that personal right as to exclude the voter from the polling place." *United States v. Saylor*, 322 U.S. 385, 387–88 (1944). In turn, the disruptive and potentially disenfranchising effects of Plaintiffs' action would require Proposed Intervenors to divert resources to safeguard the timely certification of statewide results, thus implicating another of their protected interests. *See, e.g.*, *Ne. Ohio Coal. for Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016) (finding concrete, particularized harm where organization had to "redirect its focus" and divert its "limited resources" due to election laws); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding that electoral change "injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *see also Issa*, 2020 WL 3074351, at *3 (granting intervention and citing this protected interest).

### 3. Proposed Intervenors' interests are not adequately represented by the current parties.

Finally, Proposed Intervenors' interests are not adequately represented by Plaintiffs or Defendants. "Although a would-be intervenor is said to shoulder the burden with respect to establishing that its interest is not adequately protected by the existing parties to the action, this burden 'is minimal because it is sufficient that the movant[] prove that representation *may* be inadequate.'" *Mich. AFL-CIO*, 103 F.3d at 1247 (alteration in original) (emphasis added) (quoting *Linton*, 973 F.2d at 1319). "The question of adequate representation does not arise unless the applicant is somehow represented in the action. An interest that is not represented at all is surely not 'adequately represented,' and intervention in that case must be allowed." *Grubbs*, 870 F.2d at 347. Where one of the original parties to the suit is a government entity whose "views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," courts have found that "the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citing *Conservation Law Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)).

Here, while Defendants have an interest in defending the actions of state and local officials, Proposed Intervenors have different objectives: ensuring that the valid ballot of every Democratic voter in Michigan is counted and safeguarding the election of Democratic candidates. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'"

12

(quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)))). That is the case here. Proposed Intervenors have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither Defendants nor any other party in this lawsuit share. *See Paher*, 2020 WL 2042365, at *3 (granting intervention as of right where proposed intervenors "may present arguments about the need to safeguard [the] right to vote that are distinct from [state defendants'] arguments"). As one court recently explained under similar circumstances,

> [w]hile Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors [including a state political party] are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures. As a result, the parties' interests are neither "identical" nor "the same."

*Issa*, 2020 WL 3074351, at *3 (citation omitted). Because Proposed Intervenors' particular interests are not shared by the present parties, they cannot rely on Defendants or anyone else to provide adequate representation. They have thus satisfied the four requirements for intervention as of right under Rule 24(a)(2). *See id.* at *3–4; *Paher*, 2020 WL 2042365, at *3.

**B.      Alternatively, Proposed Intervenors should be granted permissive intervention.**

Even if Proposed Intervenors were not entitled to intervene as of right, permissive intervention is warranted under Rule 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA*, 448 F. Supp. 3d at 759–60. Proposed intervenors need only show that their interest is "'distinct' from the

13

defendants, regardless of whether it is 'substantial.'" *Pub. Interest Legal Found.*, 463 F. Supp. 3d at 800 (quoting *League of Women Voters*, 902 F.3d at 579).

Proposed Intervenors easily meet these requirements. First, their motion is timely and intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Part IV.A.1 *supra*. Moreover, Proposed Intervenors' interests are distinct and not adequately represented by the existing defendants. *See* Part IV.A.3 *supra*. And Proposed Intervenors will undoubtedly raise common questions of law and fact in opposing Plaintiffs' suit. In addition to challenging Plaintiffs' claims as a matter of law, *see* Ex. 2, Proposed Intervenors will also submit affidavits from election volunteers refuting the complaint's baseless allegations. *See, e.g.*, Exs. 4–6.

## V. CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully ask this Court to grant their motion to intervene.

Dated: November 18, 2020.     Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
Joe M. Infante (P68719)
MILLER CANFIELD
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
Telephone: (517) 483-4918
eldridge@millercanfield.com
infante@millercanfield.com

Mary Ellen Gurewitz (P25724)
CUMMINGS & CUMMINGS
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
Telephone: (248) 733-3405
maryellen@cummingslawpllc.com

Marc E. Elias (DC #442007)
John M. Devaney (DC #375465)*
Jyoti Jasrasaria (DC #1671527)
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
Telephone: (202) 654-6200
melias@perkinscoie.com
jdevaney@perkinscoie.com
jjasrasaria@perkinscoie.com

William B. Stafford (WA #39849)*
Jonathan P. Hawley (WA #56297)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
wstafford@perkinscoie.com
jhawley@perkinscoie.com

Seth P. Waxman (DC #257337)
Brian M. Boynton (DC #483187)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 663-6000
seth.waxman@wilmerhale.com
brian.boynton@wilmerhale.com

John F. Walsh (CO #16642)
WILMER CUTLER PICKERING HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, Colorado 80202
Telephone: (720) 274-3154
john.walsh@wilmerhale.com

*Counsel for Proposed Intervenor-Defendants DNC Services Corporation/Democratic National Committee and Michigan Democratic Party*

*Admission pending