# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

ANGELIC JOHNSON.; *et al.,*

           Plaintiffs,

   v.

JOCELYN BENSON, in her capacity
as Michigan Secretary of State; *et al.*,

          Defendants.

Civil Action No.: 20-cv-01098

Honorable Janet T. Neff

**MEMORANDUM IN SUPPORT OF MOTION OF NON-PARTIES MICHIGAN STATE CONFERENCE NAACP, WENDELL ANTHONY, YVONNE WHITE, AND ANDRE WILKES TO INTERVENE AND FOR LEAVE TO FILE A RESPONSIVE PLEADING ON THE SAME SCHEDULE AS DEFENDANTS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………..ii

I. INTRODUCTION……………………………………………………1

II. FACTUAL BACKGROUND………………………………………...4

    A. Plaintiffs Seek to Undo Michigan's Efforts to Ensure All
        Lawfully Cast Votes Are Counted…………………………..4

    B. The Organizational Applicant Promotes the Interests of
        Voters and Has Members Who Would Be Disenfranchised
        by the Relief Plaintiffs Seek…………………………………5

    C. The Individual Applicants Are Voters Who Would Be
        disenfranchised by the Relief Plaintiffs Seek…………………..6

III. APPLICANTS ARE ENTITLED TO INTERVENE AS A
     MATTER OF RIGHT……………………………………………7

    A. The Motion to Intervene Is Timely……………………………..8

    B. Applicants Have Sufficient Interest in This Litigation…………8

    C. Disposition of this Case May Impair Applicants' Interests…….11

    D. The Interests of Existing Defendants May Diverge from
        Those of Applicants……………………………………………13

IV. IN THE ALTERNATIVE, THE COURT SHOULD GRANT
     PERMISSIVE INTERVENTION……………………………………..15

V. THE COURT SHOULD GRANT APPLICANTS LEAVE TO FILE
    A RESPONSIVE PLEADING ON THE SAME SCHEDULE AS
    DEFENDANTS………………………………………………………17

VI. CONCLUSION………………………………………………………..17

# TABLE OF AUTHORITIES

**Cases**

*Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98 (M.D. Pa. 2011) ............ 13

*Bally v. Whitmer*, Case No 1:20-cv-1088 (W.D. MI, November 16, 2020) ........................ 2

*Blount-Hill v. Zelman*, 636 F.3d 278 (6th Cir. 2011) ............................................................ 8

*Bradley v. Milliken*, 828 F.2d 1186 (6th Cir. 1987) ............................................................. 9

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) ............................................................... 12

*Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019) ........................................... 10

*Commonwealth of Pa. v. President of United States of Am.*, 888 F.3d 52
(3d Cir. 2018) ................................................................................................................. 8, 10

*Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007),
*aff'd*, 553 U.S. 181 (2008) .................................................................................................. 11

*Davis v. Secretary of State*, Michigan Court of Appeals No. 354622,
2020 WL 5552822 (__N.W.2d___, September 16, 2020) ..................................................... 4

*Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) ...................................... 14

*Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-02078-MWB
(Nov. 12, 2020, M.D. Pa.) ................................................................................................... 15

*Donaldson v. United States*, 400 U.S. 517 (1971) ................................................................ 8

*Fla. State Conf. of N.A.A.C.P. v. Browning,* 522 F.3d 1153 (11th Cir. 2008) .................. 11

*Ind. State Conf. of NAACP v. Lawson,* 326 F. Supp. 3d 646 (S.D. Ind. 2018),
*aff'd*, 937 F.3d 944 (7th Cir. 2019) .................................................................................... 12

*Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ......... 11

*Jansen v. City of Cincinnati,* 904 F.2d 336 (6th Cir. 1990) ................................................. 13

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) .......................................... 8, 15

*Kobach v U. S. Election Assistance Comm'n*, No. 13-cv-04095,
2013 WL 6511874 (D. Kan. Dec.12, 2013) ................................................ 11, 14

*LaRoque v. Holder*, No. 1:10-cv-00561 (D. D. C. Aug. 25, 2010) ..................................... 11

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421
(5th Cir. 2011) ..................................................................................... 9

*League of Women Voters of Michigan v. Johnson*, 902 F.3d 572 (6th Cir. 2018) ............ 17

*Meek v. Metro. Dade County*, 985 F.2d 1471 (11th Cir. 1993) .......................................... 14

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997) ........... 7, 8, 9, 12, 13, 15

*Nat'l Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558 (D.N.J. 1983) ................................... 16

*Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012) .............. 9

*OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017) .......................................... 11

*Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684 (W.D. Pa. 2003) .............. 9

*Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F.Supp.3d 795
(E. D. Mich. 2020) ................................................................................. 11, 17

*Purnell v. City of Akron*, 925 F.2d 941 (6th Cir. 1991) ..................................................... 8

*Seneca Res. Corp. v. Twp. of Highland, Elk Cty.*, 863 F.3d 245 (3d Cir. 2017) ................ 12

*Texas v. United States*, 798 F. 3d 1108 (D. C. Cir. 2015) .................................................. 11

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ....................................... 13

*Trump v. Benson*, 1:20-cv-1083 (W.D. MI. 2020) ................................... 1, 2, 3, 8, 9, 12, 15

*United States v. Territory of V.I.*, 748 F.3d 514 (3d Cir. 2014) ......................................... 13

iii

**Rules**

Fed. R. Civ. P. 24(a) ................................................................................. 7

Fed. R. Civ. P. 24(b) ........................................................................... 15, 16

The Michigan State Conference NAACP ("NAACP-MI") (the "organizational Applicant") and Wendell Anthony, Yvonne White, and Andre Wilkes (together, the "individual Applicants") (collectively, "Applicants") submit this memorandum in support of their Motion to Intervene as Defendants as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure ("F.R.C.P."), or, in the alternative, for permissive intervention pursuant to Rule 24(b); and for leave to file and serve their response to the Complaint on the same schedule as Defendants.

Counsel for Plaintiffs and Defendants will not oppose this motion.[1] In the related case of *Donald J. Trump for President, Inc. v. Jocelyn Benson* ("*Trump v. Benson*"), the Court granted a motion for permissive intervention by these same Applicants on November 17, 2020.[2]

## I.  INTRODUCTION

On November 15, 2020, Plaintiffs Angelic Johnson[3] and Sarah Stoddard, Macomb and Wayne Counties voters, filed their unverified Complaint under 42 U.S.C. § 1983 seeking unprecedented relief to stop certification of the November 3rd election results statewide based upon a host of bald assertions and conclusory allegations. ECF 1, Complaint. The Complaint does not seek expedited treatment and Plaintiffs have not filed motions for emergency relief.

---

[1] See Certificate of Compliance with L.R. 7.1(d).
[2] *Trump v. Benson*, 1:20-cv-1083 (W.D. MI. 2020), ECF No. 20.
[3] Plaintiff Johnson alleges she is a member of "Black Voices for Trump." ECF 1 ¶14, page 4. Plaintiff Johnson does not purport to represent the interests of all of Black voters.

1

This is at least the third lawsuit filed in this Court seeking to stop certification of the election results in Michigan and one of many filed by the Trump campaign and its allies in other states seeking similar relief. One of these cases, *Bally v. Whitmer*, was voluntarily dismissed.[4] The second, *Trump v. Benson,* is pending and the Court granted a motion for permissive intervention by these same Applicants in that case.

Many of the Plaintiffs' grievances in their unverified Complaint are focused upon Wayne County, home to Detroit, which has the largest concentration of Black voters in the state.

No court has *ever* granted the relief requested by Plaintiffs—to disallow votes and enjoin certification of an election based upon the kind of bald assertions and grievances alleged by the Plaintiffs. To do so at the cost of hundreds of thousands of votes lawfully cast—not coincidentally in a county with the largest Black population in Michigan—would be unprecedented and unlawful. Further, it is unconscionable and would severely undermine faith in the integrity of both this nation's elections and judicial processes.

Applicants are critical participants in these actions. They represent the interests of individual voters and are well-situated to defend the rights of all Michigan voters, particularly Black voters, to have their votes count. The individual Applicants

---

[4] *Bally v. Whitmer*, Case No 1:20-cv-1088 (W.D. MI, November 16, 2020), ECF No. 14.

are voters whose lawfully cast ballots would be thrown out if Plaintiffs obtain the relief they seek. The organizational Applicant, NAACP-MI, is a nonpartisan organization representing the interests of its approximately 20,000 Michigan members—many (perhaps most) of whose votes would also be thrown out—and is dedicated to eliminating barriers to voting and increasing civic engagement among its members and in traditionally disenfranchised communities.

Applicants are entitled to intervene as a matter of right under F.R.C.P. 24(a)(2) because: (1) Applicants filed this motion without delay; (2) Applicants have legally protectable interests in ensuring their lawfully cast ballots are counted; (3) the relief Plaintiffs seek would harm Applicants' interests; and (4) Applicants' interests – the counting of their votes – is distinct from those of the named Defendants.

Alternatively, Applicants should be permitted to intervene under Rule 24(b). Because Applicants seek leave to directly challenge Plaintiffs' attempt to disenfranchise hundreds of thousands of voters, their claims and defenses necessarily share common questions of law and fact with the main action, and Applicants' motion would neither delay nor prejudice the orderly adjudication of Plaintiffs' claims. For the same reasons this Court granted the motion to intervene by these same Applicants in *Trump v. Benson*, the Applicants should alternatively be granted permissive intervention here.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs Seek to Undo Michigan's Efforts to Ensure All Lawfully Cast Votes Are Counted.

The broad, unprecedented relief sought by Plaintiffs includes, among other things, enjoining certification of the general election results statewide until the Court appoints special masters to investigate "all claims of fraud in Wayne County," to verify and certify "the legality of all absentee ballots ordered through the Secretary of State's absentee ballot scheme throughout the State," and to "review and certify the legality of all absentee ballots submitted in Wayne County." Complaint, pp. 24-25.

Plaintiffs' Complaint contains a litany of bald, conclusory allegations of irregularities and misconduct that purportedly support these requests for relief. See e.g., ECF 1, Complaint ¶¶ 21-87, pp. 5-17. Plaintiffs contend that Secretary Benson's decision to send absentee ballot applications to Michigan voters in the face of the deadly COVID-19 pandemic violated Michigan law. *Id.* at ¶¶88-97. On September 16, 2020, however, the Michigan Court of Appeals determined that Secretary Benson had the authority to take this action under the Constitution and laws of the State of Michigan.[5]

---

[5] See *Davis v. Secretary of State*, Michigan Court of Appeals No. 354622, 2020 WL 5552822 (__N.W.2d___, September 16, 2020) (Copy attached hereto as Exhibit 1).

4

Plaintiffs are wrong on the facts and the law, and Applicants seek to intervene in this action to protect the interests of individual voters whose fundamental right to vote is under attack and to provide the perspective of an organization whose mission is to facilitate full and fair participation in the electoral process. Applicants have at least as much of an interest in the outcome of this litigation as Defendants. Indeed, as voters who stand to be disenfranchised if Plaintiffs get their unprecedented relief, the individual Applicants' and the NAACP's members' interest is arguably greater.

## B. The Organizational Applicant Promotes the Interests of Voters and Has Members Who Would Be Disenfranchised by the Relief Plaintiffs Seek.

The NAACP-MI is a non-profit, civil rights advocacy organization for Black Americans. NAACP-MI includes 32 local units with approximately 20,000 members, a significant portion of whom are registered voters who are at risk of being unlawfully deprived of their right to vote. Exhibit 2, White Dec. ¶9-11. A large number of the NAACP-MI's membership, approximately 13,000 members, are Wayne County residents. *Id.* ¶12. NAACP-MI is dedicated to eliminating barriers to voting and increasing civic engagement among its members and in traditionally disenfranchised communities. *Id.* ¶¶ 13-20. Indeed, one of NAACP-MI's organizational missions is to ensure all eligible Michigan citizens are given a full and equal opportunity to exercise their fundamental right to vote. *Id.* ¶13. The NAACP-MI expends substantial resources on voter education and turnout efforts. For this election, NAACP-MI's efforts included providing accurate information to

voters on how to cast in-person, mail-in, and absentee ballots to ensure voters have a full and fair opportunity to participate during an unprecedented global pandemic. *Id.* The NAACP focuses on strategies, including litigation, to eliminate Black voter suppression in Michigan. *Id.* ¶¶ 13-20. NAACP-MI has members who would be disenfranchised if Plaintiffs obtained the relief they seek, including members who voted by mail-in ballot in and outside of Wayne County.

### C.    The Individual Applicants Are Voters Who Would Be disenfranchised by the Relief Plaintiffs Seek.

Applicant Andre Wilkes is a 19-year-old Black registered voter and resident of Oakland County. Exhibit 3, Wilkes Dec., ¶¶3-5. Due to concerns about COVID-19, he applied for and received an absentee ballot for the November 3rd election. *Id.* ¶6. He submitted his absentee ballot in-person at the City of Oak Park Clerk's Office on October 29, 2020. *Id.*, ¶7. Mr. Wilkes is very concerned the relief Plaintiffs seek will invalidate his vote and deprive him of his right to have his democratic voice heard in his community and country. *Id.* ¶¶8-10.

Applicant Reverend Wendell Anthony is a 70-year-old Black registered voter and resident of Wayne County. Exhibit 4, Anthony Dec. ¶¶3-5. Due to concerns about COVID-19, he applied for and received an absentee ballot for the November 3rd election. *Id.* ¶6. He submitted his absentee ballot in-person and verified that it was received through the Michigan Voter Information website. *Id.* ¶7. Reverend Anthony testifies it would be outrageous if his legally cast vote was invalidated due to the relief Plaintiffs seek in this case. *Id.* ¶8. Reverend Anthony believes this

lawsuit and others specifically target Black communities and cities in an undemocratic attempt to deprive them of their right to vote. *Id.* ¶9.

Applicant Yvonne White is the President of NAACP-MI. Exhibit 2, White Dec. ¶9. President White is a registered voter and resident of Wayne County. *Id.* ¶3-4. On November 3rd, President White voted in-person at her designated polling location. *Id.* ¶5. President White is very concerned the relief Plaintiffs seek in this case will deny her right to have her democratic voice heard. *Id.* ¶6-7.

The relief sought by Plaintiffs, which would invalidate a disproportionate number of votes legally cast by eligible Black voters, would adversely affect many individual members of NAACP-MI. *Id.* ¶¶20-21. Such an outcome would also adversely affect NAACP-MI's mission, in that it would be forced to dedicate additional resources to voter education efforts and voting rights litigation, at the expense of other organizational priorities, in order to overcome the sense of futility among eligible voters that would result. *Id.* ¶¶22-24.

## III.   APPLICANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Applicants satisfy the criteria to intervene as of right under Fed. R. Civ. P. 24(a). Applicants have a right to intervene upon establishing: "(1) timeliness of the application, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). The Sixth

Circuit has emphasized that Rule 24 should be "broadly construed in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991). When the four requirements of Rule 24(a) are satisfied, intervention is mandatory. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998); *see also Commonwealth of Pa. v. President of United States of Am.*, 888 F.3d 52, 60 (3d Cir. 2018). Applicants have satisfied those requirements.

### A. The Motion to Intervene Is Timely.

This motion, filed three days after Plaintiffs initiated this action and before any other proceedings have occurred, is undoubtedly timely. *Trump v. Benson, supra,* ECF 20, pp 4-5 (finding application timely when filed within three days of the filing of the complaint); *Michigan State AFL-CIO*, 103 F.3d at 1245 (finding application timely when filed two weeks after the complaint). Applicants' prompt intervention will not delay the advancement of this action or otherwise prejudice the parties, and all of the relevant circumstances show this application is timely. *See Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (timeliness is "evaluated in the context of all relevant circumstances"). Applicants' motion to intervene is timely for purposes of Rule 24.

### B. Applicants Have Sufficient Interest in This Litigation.

Applicants have "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The Sixth Circuit has "a rather expansive notion of the interest sufficient to invoke intervention

of right." *Michigan State AFL-CIO*, 103 F.3d at 1245; *see Bradley v. Milliken*, 828

F.2d 1186, 1192 (6th Cir. 1987) ("[T]his court has acknowledged that 'interest' is to

be construed liberally.")

Applicants' interest is simple: Voters who legally cast ballots in the 2020

election have significantly protectable interests in ensuring their ballots are counted.

See *Trump v. Benson, supra,* (finding a substantial interest in subject matter of

litigation seeking to enjoin certification of general election results); *League of*

*United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011)

(finding legally protectable interests where the intervenor sought to protect his right

to vote). The Constitution "accords special protection for the fundamental right of

voting, recognizing its essential role in the 'preservati[on] of all rights." *Northeast*

*Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (citations

omitted). *See also Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684,

694–95 (W.D. Pa. 2003) ("The right of qualified electors to vote . . . is recognized

as a fundamental right, . . . extend[ing] to all phases of the voting process, [and

applying] equally to the initial allocation of the franchise as well as the manner of its

exercise.").

Likewise, NAACP-MI has an interest in protecting one of its core missions—

ensuring its members, and all citizens of Michigan, are given a full and equal

opportunity to exercise their fundamental right to vote—which it has dedicated

considerable effort to advancing. *See Commonwealth of Pa. v. President of United*

*States of Am.*, 888 F.3d at 58 (permitting a religious group to intervene based on its interest in preserving the religious exemption achieved through prior litigation efforts, where the religious organization was described as an "impetus for change").

The NAACP-MI is committed to eliminating barriers to voting and increasing civic engagement, especially in communities that have been traditionally disenfranchised. In pursuit of that mission, it engages in robust voter-registration, voter-education, and get-out-the-vote activities, expending considerable resources to ensure eligible voters in Michigan can exercise their right to vote. Discarding ballots that have been lawfully cast would undermine the organization's voter-advocacy efforts by leading some voters to believe that voting is pointless because their ballots will not be counted, making it more difficult and more expensive for NAACP-MI to carry out its mission in the future. The threat of frustration of this core voter-enfranchisement mission gives NAACP-MI a significantly protectable interest in this litigation. *See, e.g.*, *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) ("[A] voting law can injure an organization enough to give it standing by compelling [it] to devote resources to combatting the effects of that law that are harmful to the organization's mission.").

The NAACP-MI also has an interest in ensuring legally cast ballots are not discarded because that would force the organization to divert resources from other organizational priorities to educate members and other voters about their rights and the severe restrictions on voting Plaintiffs seek to impose. *See, e.g.*, *OCA-*

*Greater Houston v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017) (finding standing where organization was required to dedicate additional resources to assisting voters); *Fla. State Conf. of N.A.A.C.P. v. Browning,* 522 F.3d 1153, 1164-65 (11th Cir. 2008); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020). If Plaintiffs obtain the relief they seek, NAACP-MI would be forced to commit resources immediately to respond to questions from members and voters about the status of their lawfully cast ballots and would result in the diversion of the organization's resources for years to come.

Finally, courts routinely find public interest organizations, such as NAACP-MI, should be granted intervention in voting and other election-related cases, recognizing the significantly protectable interests such organizations have in the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111 (D. C. Cir. 2015); *Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F.Supp.3d 795 (E. D. Mich. 2020); *Kobach v U. S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec.12, 2013); *LaRoque v. Holder*, No. 1:10-cv-00561 (D. D. C. Aug. 25, 2010). This case is no exception.

### C.    Disposition of this Case May Impair Applicants' Interests.

Applicants also satisfy the third prong of the intervention analysis because the disposition of this action may impair or impede their ability to protect their interests. Applicants need not show their interests "will" be impaired by disposition of the

litigation; they need show "only that impairment of [their] substantial legal interest is *possible* if intervention is denied." *Michigan State AFL-CIO*, 103 F.3d at 1247; *see also Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (holding proposed intervenor need show only that its interest "may" be impaired). "This burden is minimal." *Michigan State AFL-CIO*, 103 F.3d at 1247.

The individual Applicants, NAACP-MI's members, and many other Michigan voters are in jeopardy of being stripped of their fundamental right to vote. Applicants' rights thus undoubtedly stand to "be affected by a proposed remedy in this case." *See Trump v. Benson, supra.; Seneca Res. Corp. v. Twp. of Highland,Elk Cty.*, 863 F.3d 245, 257 (3d Cir. 2017). The individual Applicants could have their lawfully cast ballots tossed out. NAACP-MI is at risk of losing its ability to protect its interests and those of its members in voter participation. These concerns of voter disenfranchisement are amplified with respect to the underrepresented minority communities NAACP-MI serves. "Historically . . . throughout the country, voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson,* 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd*, 937 F.3d 944 (7th Cir. 2019). NAACP-MI has worked to remedy those practices, in part, by ensuring their voter-registration, voter-education, and get-out-the-vote efforts reach vulnerable and underserved minority communities. Thus, the organization has a significant interest in ensuring Plaintiffs' proposed relief does

not harm those communities.

### D.   The Interests of Existing Defendants May Diverge from Those of Applicants.

Applicants also meet the "minimal" burden of demonstrating the existing parties in the litigation may not protect their interests. *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972); *Jansen v. City of Cincinnati,* 904 F.2d 336 (6th Cir. 1990) (granting intervention to class of black fire fighters in challenge by white fire fighters to city's diversity hiring program, finding the city would not adequately protect their interests); *Michigan State AFL-CIO*, 103 F.3d at 1247 ("this burden is minimal because it is sufficient that the movant[ ] prove that representation may be inadequate"). "The possibility the interests of the applicant and the parties may diverge need not be great," *Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98, 110 (M.D. Pa. 2011), and a proposed intervenor need show only that, "although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper attention," *United States v. Territory of V.I.*, 748 F.3d 514, 519–20 (3d Cir. 2014).

Here, the interests of theApplicants are distinct and may diverge from those of the governmental Defendants. *See Am. Farm Bureau Fed'n,* 278 F.R.D. at 110-11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders). While Defendants may have a generalized interest in upholding the law, they do not have a direct interest

13

in protecting the validity of their own votes, as do the individual Applicants and NAACP-MI's members, or in ensuring the broad voter access that is fundamental to the mission of NAACP-MI. *See Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095- EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (applicants who had shown their interests in voting rights, particularly minority voting rights, might have private interests that diverge from the public interest of the defendant Election Assistance Commission); *see also, e.g.*, *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), (Interests of intervenors seeking greatest possible participation in the political process likely to diverge from interests of a County's interest), abrogated on other grounds by *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007).

Moreover, there are a number of issues, positions, and claims a governmental entity may raise that are critical to public-interest organizations such as NAACP-MI. Unlike Defendants, who are broadly responsible for the management of elections, the interests of Applicants are personal to these individuals, to the organization's members, and particularly to the Black community whose voting rights are under siege from Plaintiffs. The Applicants' right to vote—indeed, their right to have the lawful votes they have already cast counted—is at risk. As the Third Circuit recognized: "[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of

representation] is comparatively light." *Kleissler*, 157 F.3d at 972; *see also Michigan State AFL-CIO*, 103 F.3d at 1247-1248 (recognizing interests of proposed private intervenor and of the defendant Secretary of State might diverge, although they purported to seek the same outcome).

## IV.  IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

Even if the Court determines Applicants are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. A court may grant permissive intervention when the motion to intervene is timely and the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In exercising its discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. The decision of a district court to permit intervention will be upheld unless it constitutes an abuse of discretion. *Michigan State AFL-CIO*, 103 F.3d at 1248.; *Trump v. Benson; supra.; Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-02078-MWB, Document 72 (Nov. 12, 2020, M.D. Pa.)(granting motion for permissive intervention of the Pennsylvania NAACP and other civil rights organizations in a similar case).

Applicants easily satisfy the threshold requirements for permissive intervention here. Their motion is timely, and they seek to assert defenses that squarely address the factual and legal premise of Plaintiffs' claims, including but not limited to the virtual laundry list of purported election administration irregularities

and conclusory allegations of alleged fraud alleged in the Plaintiffs' Complaint.

Permissive intervention is especially appropriate where, as here, Applicants may meaningfully contribute to the proper development of the factual or legal issues in dispute. *See Nat'l Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J. 1983). Applicants expect to present a perspective on key legal and factual issues that is different from that of the Defendants and the other parties in this case.

In particular, the individual Applicants and NAACP-MI's members are themselves among the individual voters whose ballots Plaintiffs seek to discard. Furthermore, NAACP-MI will be able to present a unique perspective based on its deep experience educating, registering, and assisting voters in Michigan counties and constituent communities. NAACP-MI, NAACP affiliates in other states, and Applicants' counsel have litigated hundreds of voting rights cases and have experience analyzing claims such as those asserted here and the evidence related to them. Applicants and their counsel will draw on this national experience and their history representing populations most likely to be impacted by the relief Plaintiffs seek in framing their defense of this litigation. NAACP-MI also represents thousands of Michigan voters who, along with individual Applicants, would potentially be disenfranchised if Plaintiffs are successful in this litigation.

Granting Applicants' Motion would not delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b). By contrast, refusing to permit

16

intervention would deprive Applicants the opportunity to defend their significant and protectable interests in the litigation.

## V.   THE COURT SHOULD GRANT APPLICANTS LEAVE TO FILE A RESPONSIVE PLEADING ON THE SAME SCHEDULE AS DEFENDANTS.

Applicants further move for leave to file a responsive pleading on the same date the current Defendants file a pleading in response to the Complaint. This Court has discretion to grant a motion to intervene that is not accompanied by a pleading where no prejudice will result to the other parties. Indeed, the Sixth Circuit has held that the failure to attach a proposed pleading is not a valid basis for denying an otherwise proper motion to intervene. *See Public Interest Legal Foundation, Inc. v. Winfrey*, 463 F.Supp.3d at 802 (citing *League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 580 (6th Cir. 2018)). The Sixth Circuit takes "a lenient approach to the requirements of Rule 24(c)," especially where the parties have not identified any prejudice that would result from granting a motion to intervene despite the failure to attach a pleading. *League of Women Voters of Michigan*, 902 F.3d 580. This motion is being filed at the very outset of the litigation and granting this motion in the absence of a proposed responsive pleading will not delay or prejudice any party. For these reasons, Applicants request leave to file a responsive pleading on the same schedule as Defendants.

## VI.   CONCLUSION

Based upon the foregoing, Applicants request that their motion for

intervention as a right, or alternatively for permissive intervention, be granted and that they be allowed to file their responsive pleading on the same schedule as Defendants.

Dated: November 18, 2020                         Respectfully submitted,

/s/ Eugene Driker
Eugene Driker (P12959)
Stephen E. Glazek (P23186)
Daniel M. Share (P26903)
Barris, Sott, Denn & Driker, P.L.L.C.
333 West Fort Street, Suite 1200
Detroit, MI  48226
(313) 965-9725
edriker@bsdd.com
sglazek@bsdd.com
dshare@bsdd.com

Kristen Clarke
Jon Greenbaum
Ezra Rosenberg
Julie M. Houk
LAWYERS COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300
kclarke@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org

*Counsel for Proposed Intervenor-Defendants*

## CERTIFICATE OF WORD COUNT

I HEREBY CERTIFY on this 18th day of November that the above

memorandum contains fewer than 4,300 words (4,284).

/s/  Eugene Driker

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing memorandum of law in support of motion to intervene was filed electronically and served on all counsel of record via the ECF system of the U.S. District Court for the Western District of Michigan.

Dated: November 18, 2020

/s/  Eugene Driker